# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

ROBERT DICE,                                   :

                Plaintiff,

      -vs-

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY[1],

              Defendant.      :

Case No. 3:06-cv-328

District Judge Walter Herbert Rice
Chief Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS

---

       Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

       Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a

---

[1] The Court notes that on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. See, http://www.ssa.gov/pressoffice/pr/astrue-pr.htm. In accordance with Fed.R.Civ.P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as Defendant in this action. However, in accordance with the practice of this Court, the caption remains the same.

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365  (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d  437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any

2

other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the

claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

       Plaintiff filed an application for SSD with a protective filing date of July 18, 2002, alleging disability from November 15, 1995, due to chronic severe low back pain and abdominal pain due to an injury. (Tr. 68-70; 95-104). Plaintiff's application was denied initially and on reconsideration. (Tr. 38-41; 45-47). While Plaintiff's request for hearing was pending, he filed an application for SSI alleging disability from November 15, 1995. (Tr. 342). Plaintiff's application for SSI was escalated to the hearing level and Administrative Law Judge Daniel Shell held a hearing and a supplemental hearing on both applications. (Tr. 357-73; 374-99). Judge Shell subsequently determined that Plaintiff is not disabled under the Act. (Tr. 12-27). The Appeals Council denied Plaintiff's request for review, (Tr. 3-6), and Judge Shell's decision became the Commissioner's final decision.

       In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff met the insured status requirements of the Act through June, 1998. (Tr. 25, finding 1). Judge Shell also found that Plaintiff has severe vertebrogenic disorder of the lumbar spine involving lumbar facet arthritis, lumbar radiculopathy, and scar tissue on the spine related to a history of microlumbar diskectomy in March, 1996, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.,* finding 3. Judge Shell then found that Plaintiff has the residual functional capacity to perform a limited range of sedentary work. *Id.,* finding 5; Tr. 26, finding 7. Judge Shell then used section 201.21 of the Grid as a framework for deciding, coupled

with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing.  *Id.*, findings 11, 12.  Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act.  (Tr. 27).

Plaintiff sustained a work-related injury in September, 1995, when trying to lift a large tool box.  *See*, Tr. 198.  Subsequently, Plaintiff consulted with neurosurgeon Dr. Minella who determined that Plaintiff's objective findings were consistent with a central/left disc protrusion at L-5 with impingement on the left L-5 nerve root.  (Tr. 185).  Dr. Minella performed a micro lumbar discectomy at L4-5 on the left on March 26, 1996.  (Tr. 129).  Post-operatively, Plaintiff's pre-operative symptoms were gon,e although he complained of burning in the anterior thigh.  (Tr. 183). Plaintiff's complaint of post-operative pain continued and a May 20, 1996, lumbar spine MRI revealed post-operative changes at L4-5 consistent with a left-sided laminectomy and discectomy, non-specific end-plate and disc changes with enhancement that could represent post-operative changes versus an inflammatory discitis, and mild disc desiccation at L2-3 and a central disc protrusion at L5-S1 without significant neural encroachment.  (Tr. 124-25).

On June 3, 1996, Dr. Minella recommended that Plaintiff undergo physical therapy and if necessary, back strengthening and work hardening.  (Tr. 182).

Plaintiff then sought treatment with a chiropractor over the next several years.  (Tr. 204-27; 238-66).  In addition, he underwent a series of steroid epidural injections in 1998, and again in 2000, which Dr. Phillips performed.  (Tr. 147-151, 156, 163, 168).

On August 13, 1999, examining physician Dr. Hofman reported that Plaintiff complained of discomfort in his lower back which occurred every day, that the discomfort radiated into the anterior aspect of his left thigh and was associated with numbness, and that he had

5

discomfort in his lower anterior mid-abdominal area. (Tr. 198-203). Dr. Hofman also reported that Plaintiff walked with a slow, stiff but otherwise normal gait, that he was able to walk on his tip toes and heels without difficulty, that he had tenderness over the spinous processes of the lower lumbar and upper sacral spine, that there was tenderness in the lumbar vertebral musculature bilaterally extending towards the SI joints bilaterally into the left gluteal area, that there was tenderness above the umbilicus extending towards the symphysis pubis although the abdomen was soft, that there were no palpable masses, that his range of motion of his lumbar spine was painful and limited, and that straight leg raising caused low back pain on the left at 50 degrees and on the right at 54 degrees. *Id.* Dr. Hoffman noted that Plaintiff's reflexes were 2+ and equal bilaterally, that his Achilles tendon reflex was absent on the left, that there was a relative sensory deficit to slight touch about the anterior and lateral aspect of the left thigh, and that resisted extension of both big toes and ankles was equal bilaterally and strong at 5/5. *Id.* Dr. Hofman noted further that Plaintiff felt overall that he "was slowly getting better," that Plaintiff's allowed condition of umbilical hernia had reached maximum medical improvement, that his allowed condition of L4-5 herniated disc and L5-S1 herniated disc with lumbar sacral sprain had not reached maximum medical improvement, and that conservative treatment such as physical therapy, chiropractic manipulations, or injections cannot reasonably be expected to change Plaintiff's condition, but that Plaintiff deserved a spinal surgical consult to see whether he would be a reasonable candidate for a lumbar sacral fusion. *Id.* Dr. Hofman opined that Plaintiff would not be able to return to his former position of employment but required permanent restrictions of activity to light sedentary work of not lifting or carrying more than ten pounds, avoiding any activity which required other than occasional squatting or kneeling, no bending, no standing, or sitting in the same position for more than one-half hour at any one time,

6

and no climbing, pushing, or pulling more than twenty pounds. *Id.*

On March 1, 2000, Dr. Minella reported that Plaintiff had returned to see him because of an evaluation which recommended possible lumbar fusion, that Plaintiff had chronic back pain with radiation to the left anterior thigh, that there was no weakness, but that there was increased sensitivity to pin prick in the left leg, absent ankle jerks and 2 plus knee jerks. (Tr. 179). Dr. Minella recommended a follow up MRI which was performed on March 22, 2000, and showed a small to moderate right central disc protrusion at L3-4 that resulted in mild to moderate compression of the right ventral aspect of the thecal sac, post-operative changes at L4-5 with a moderate amount of scar tissue surrounding the thecal sac and left L5 nerve root, no recurrent or lateralizing disc herniation at L4-5, and mild discogenic changes in the other levels of the lumbar spine. (Tr. 135-36). Dr. Minella reported on April 10, 2000, that he had reviewed Plaintiff's MRI and that there was nothing on the left side to explain Plaintiff's pain, that he had a small disc at L3-4 on the right but this was obviously on the wrong side, and that he could not recommend surgery. (Tr. 176). Dr. Minella recommended conservative treatment. *Id.*

An August 18, 2004, lumbar spine MRI revealed post-operative changes at L4-5 on the right without evidence for recurrent disc herniation, moderate sized central and slightly rightward disc herniation at L3-4, which appeared similar to perhaps slightly larger than on a prior examination, and a small central disc herniation at L5-S1 without significant neural encroachment. (Tr. 302-03).

Plaintiff consulted with neurosurgeon Dr. Moncrief on August 31, 2004, who reported that Plaintiff laid on the exam table with his knees flexed for comfort during the exam, when he walked he had slightly flexed at the waist posture, his motor exam to the lower extremities

did not reveal any obvious weakness, reflexes were absent below the waist, and that there was no point tenderness in the low back. (Tr. 298-301). Dr. Moncrief also reported that Plaintiff had a L4 and L5 hypalgesia on the left as well as a left L3 hyperpathia, that straight leg raising caused low back pain at 45 degrees on the right and on the left at 30 degrees, that despite complaints of pain in the right arm and hand, an EMG done on August 11, 2004, did not reveal any evidence of acute radiculopathy, that a lumbar MRI done on August 18, 2004, showed degenerative disease throughout the lumbar spine, L3-4, L4-5, and L5-S1, evidence of left-sided laminectomy and discectomy at L4-5 with scarring surrounding the L5 nerve root, and a disc bulge at L3-L4. *Id.* Dr. Moncrief's impression was lumbar facet arthropathy, low back pain, and lumbar radiculopathy. *Id.* Dr. Moncrief recommended lumbar facet injections and noted that due to the degeneration in Plaintiff's lumbar spine, the facets were quite thickened and that lumbar facet injections might help facilitate mobilization of those facets. *Id.* Dr. Moncrief also recommended physical therapy. *Id.* Dr. Moncrief opined that Plaintiff was able to stand/walk for one to two hours in an eight hour day and for fifteen to thirty minutes without interruption, sit for one hour in an eight hour day and for fifteen to thirty minutes without interruption, that he was not able to lift and carry any weight and that Plaintiff was unemployable. *Id.*

During the period September 20-October 5, 2004, Plaintiff underwent a series of epidural steroid injections which Dr. Smith performed. (Tr. 309-13). Dr. Smith reported on October 29, 2004, that Plaintiff had been his patient since September 20, 2004, that he presented with a chief complaint of pain that began in the lumbar back and radiated to his left thigh and leg, that he initially described the pain as being present since September, 1995, increasing in severity over the last several months, and he described the pain as sharp, dull, and a shooting type pain. (Tr. 314-19).

8

Dr. Smith also reported that based on his review of Plaintiff's chart, his history and treatment provided, and considering the combined effects of his physical and emotional impairments on his ability to function, he (Dr. Smith) was doubtful that Plaintiff would be able to return to any type of gainful employment in the future, that he had been deemed 'disabled' by his referring physician, Dr.Moncrief, and that it was doubtful Plaintiff would be able to complete a normal work day and work week without interruption from psychologically and/or physically based symptoms or be able to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Smith opined that Plaintiff was not capable of performing medium, light, or sedentary work. *Id.*

Dr.Moncrief reported on December 22, 2004, that he evaluated Plaintiff on August 26, 2004, that it was doubtful that Plaintiff would be able to maintain any type of gainful employment in the future and that Plaintiff was totally and permanently disabled due to his complaints. (Tr. 333-41). Dr.Moncrief also reported that Plaintiff was able to lift/carry up to ten pounds occasionally and up to five pounds frequently, that he was able to stand/walk for one-two hours in an eight hour day and for fifteen to thirty minutes without interruption, sit for one hour in an eight hour day and for fifteen to thirty minutes without interruption, that he could never climb, balance, crouch, kneel, or crawl, and that his abilities to reach, handle, finger, feel, and push/pull were affected by his impairments. *Id.* Dr.Moncrief also opined that Plaintiff could not sit/stand/walk for prolonged periods of time, that his driving ability was very limited, that he was not able to work an eight-hour day, and that he was not capable of performing light or sedentary work. *Id.* Dr.Moncrief noted that Plaintiff's low back pain was caused by lumbar radiculopathy and lumbar facet arthropathy, that there was a significant amount of scar tissue around the L5-S1 nerve root and that this also contributed to his back pain. *Id.* Dr. Moncrief opined that Plaintiff was

9

permanently disabled and could not fulfill employment responsibilities and duties. *Id.*

The record contains a copy of Plaintiff's treating record from chiropractor Shaffer dated April 8, 1997, to June 27, 2000, and November 4, 2003, to September 30, 2004. (Tr. 204-27; 308).

A medical advisor (MA) testified at the administrative hearing that Plaintiff did not meet or equal the Listings, that based on the objective evidence, Plaintiff was capable of performing a full line of sedentary work with a sit/stand option not to leave the work station, maybe be allowed to stand up for five minutes out of every hour, although it would not have to be consecutive, that he should avoid repetitive twisting, that he should not perform any work that required the use of ladders, ropes, or scaffolds, and that he should avoid concentrated exposure to cold, heat, wetness, humidity, vibration, heights, or hazards. (Tr. 389-94). The MA also testified that Plaintiff was not a candidate for surgery, that scar tissue around the L5 nerve root could cause no pain or it could cause a whole lot of pain depending on where it is and what it is affecting, that if you took some scar tissue and wrapped it around a nerve root it could cause pain almost all the time, and that there was no physician in the record who indicated that Plaintiff was capable of performing full time work. *Id.*

In his Statement of Errors, Plaintiff essentially argues that the Commissioner erred by finding that he is capable of performing a limited range of sedentary work and by rejecting his allegations of disabling pain. (Doc. 7).

In support of his first Error, Plaintiff argues that the Commissioner erred by rejecting the opinions of his treating physicians including Drs. Moncrief and Smith as well as the opinion of his chiropractor.

10

A treating physician's opinion is entitled to weight substantially greater than that of either a nonexamining medical advisor or an examining physician who saw a claimant only once. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997).

11

First, the Court notes that a chiropractor is not an acceptable medical source. 20 C.F.R. §§404.1513; 416.913. The Commissioner is not required to give controlling weight to a chiropractor's opinion nor is he required to adopt a chiropractor's opinion. *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005).

Second, the Court notes that neither Dr. Moncrief nor Dr. Smith established a physician-patient relationship with Plaintiff until long after the expiration of his insured status. Specifically, as noted above, Plaintiff's met the insured status requirements of the Act through June, 1998, yet he did not see Dr. Moncrief for the first time until August, 2004, and did not first see Dr. Smith until September, 2004. Neither Dr. Moncrief nor Dr. Smith related his disability opinion back to a time prior to the time of his first examination of Plaintiff. Therefore, Drs. Moncrief's and Smith's opinions cannot provide the basis for finding Plaintiff disabled prior to the expiration of his insured status. Arguably, however, their opinions are relevant to the issue of whether Plaintiff is disabled for purposes of his SSI application.

In rejecting Dr. Moncrief's and Dr. Smith's opinions, Judge Shell determined that they were not entitled to controlling or great weight because they were not supported by the objective medical evidence and were inconsistent with other evidence of record. This Court cannot say that the Commissioner erred in this regard.

Dr. Moncrief, who apparently saw Plaintiff on only one occasion, reported few clinical findings other than absent reflexes and positive straight leg raisings. In addition, Dr. Moncrief's opinion is inconsistent with other evidence of record. For example, although ne noted some positive clinical findings, examining physician Dr. Hoffman noted that Plaintiff's self-report

was that he was slowly getting better and that he was able to perform light sedentary work involving no lifting or carrying more than 10 pounds and no standing or sitting in the same position for more than one-half hour.  Further, Dr. Minella reported in April, 2000, that there was nothing showing on Plaintiff's March, 2000, MRI that would explain Plaintiff's complaints of pain.  In addition, the record indicates that Plaintiff did not seek any medical care during the period August, 2000, to September, 2004.  *See, e.g.,* Tr. 204-27; 308.  Finally, Dr. Moncrief's opinion is inconsistent with the MA's opinion.

Turning to Dr. Smith's opinion, the Court notes that Dr. Smith reported few, if any, clinical findings to support his opinion that Plaintiff is totally disabled.  In addition, Dr. Smith opined that Plaintiff is disabled as a result of the combined effects of his physical and emotional impairments.  Dr. Smith's opinion as to Plaintiff's alleged mental impairment is outside his area of expertise.  Finally, for the same reasons given with respect to Dr. Moncrief's opinion, Dr. Smith's opinion is inconsistent with the other evidence of record.

In support of his second Error, Plaintiff argues that the Commissioner erred by rejecting his allegations of disabling pain.  Plaintiff's position is that the MA testified that scar tissue can cause pain and since he (Plaintiff) has scar tissue, it follows that he has disabling pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition.  *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007).  Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain.  *Rogers, supra* (citations omitted).  First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to

produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

Of course, the presence of a diagnosis alone is never conclusive evidence of disability. *See, Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990). The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes. *Id.*

First, as to Plaintiff's argument that he has scar tissue which is causing disabling pain, the Court notes that while the MA agreed that scar tissue can cause pain, Plaintiff's own treating neurosurgeon, Dr. Minella, reported that he could not clearly say that scar tissue was the cause of Plaintiff's pain and that he could not recommend surgery. (Tr. 176). The presence of scar tissue is not conclusive evidence of disabling pain, particularly in light of treating neurosurgeon Dr. Minella's report.

Next, the evidence reveals that Plaintiff engages in a variety of daily activities including some driving, shopping, cooking, doing laundry, dusting, and running the vacuum. *See, e.g.,* Tr. 374-88. In addition, Plaintiff testified that he is able to lift 10 pounds. *Id.* Finally, the

14

record shows that Plaintiff does not require any narcotic pain medication and, indeed, takes non-prescription Tylenol for pain.  (Tr. 118).  Under these facts, the Commissioner did not err by rejecting Plaintiff's allegations of disabling pain.

   Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.  *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).  The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

   It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

July 30, 2007.

            *s/ Michael R. Merz*
           Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).